Charles ROBINSON, Sharon E. Mack, James Oliver, Joan Woodberry, James K. Hunt, Darryll F. Simpson, Veronica Caridad, Elaine Ester, Donald Hines, James Jackson, Cynthia King, Anthony Ellis, Prince Tillery, Helen Perez, Lord Taylor, Dorethea Richardson, Earl Vaughn, Teresa Whyte, Dwayne Scott, and Glenroy Liburd, Plaintiffs,

v.

**METRO–NORTH COMMUTER RAILROAD COMPANY,**
Defendant.

Raymond NORRIS, Marvin Edwards, Eric Jones, Daniel Canada, and Giesele Miguel, Plaintiffs,

v.

**METRO–NORTH COMMUTER RAILROAD COMPANY,**
Defendant.

Nos. 94 Civ. 7374 (JSR), 95 Civ. 8594 (JSR).

United States District Court, S.D. New York.

Aug. 8, 1997.

Alan L. Fuchsberg, Prof. Sarah E. Burns, New York City, for Plaintiff.

Myron Rumeld, New York City, for Defendant.

## MEMORANDUM ORDER

RAKOFF, District Judge.

Plaintiffs in these two cases sued defendant Metro–North Commuter Railroad for employment discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964 and various laws of the State of New York, and moved for class certification pursuant to Federal Rule of Civil Procedure 23(b)(2) and consolidation of their actions pursuant to Federal Rule of Civil Procedure 42(a). Following reassignment of the case to this Court on March 1, 1997, the Court convened a conference on March 12, 1997, at which, on defendant's consent, the Court granted plaintiffs' motion to consolidate, see 3/12/97 Transcript at 31, and set a firm schedule to have the case trial-ready by September 1997. Subsequently, after consideration of the parties' written submissions and oral arguments, the Court telephonically advised the parties on April 2, 1997 that the motion for class certification would be denied. This memorandum will serve to confirm that latter ruling and briefly state the reasons therefor.

The 25 plaintiffs in these two actions are present or former Metro–North employees, who have served in seven of Metro–North's 37 departments and have held 12 of Metro–North's 220 employee slottings. One of the plaintiffs is a Pacific Asian Islander, the rest African–Americans. Although most of the plaintiffs are union members, one holds a non-agreement position and three others work for an employment agency that assigned them to work on Metro–North's premises. The plaintiffs allege discrimination on varying bases, including individually varying incidents of racial discrimination, age discrimination, gender discrimination, disability discrimination, and religious discrimination. Additionally, however, both Complaints allege as a general matter that Metro–North engages in. company-wide discriminatory practices against African–American employees. On the basis of these company-wide allegations, plaintiffs seek to certify a class of "all African–American employees of defendant Metro–North Commuter Railroad from 1983 through 1996." This proposed class would include all such former or present African–American employees of Metro–North who are either union employees or lower- to middle-level management.

It is well established that the party seeking class certification bears the burden of showing that the requirements of numerosity, commonality, typicality and adequacy of representation set forth in Fed.R.Civ.P. 23(a) have been satisfied and that the putative class falls within one of the three categories set forth in Rule 23(b). *Amchem Products, Inc. v. Windsor,* —— U.S. ——, ——, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997); *Comer v. Cisneros,* 37 F.3d 775, 796 (2d Cir.1994). In this regard, the allegations set forth in the complaint are accepted as true, see *Shelter Realty Corp. v. Allied Maintenance Corp.,* 574 F.2d 656, 661, n. 15 (2d Cir.1978); *In re NASDAQ Market–Makers Antitrust Litigation,* 169 F.R.D. 493, 501 (S.D.N.Y.1996), but the Court is required to scrutinize the pleadings and other submissions to determine whether the prerequisites of Rule 23(a) have been met. See *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372–73, 72 L.Ed.2d 740 (1982). Here, the Court, after a careful examination not only of the pleadings but also of the voluminous submissions provided by the parties following extensive class certification discovery,[1] concludes that the plaintiffs have failed to carry their burden with respect to both the commonality and the typicality requirements of Rule 23(a).[2] Accordingly, their motion for certification must be denied.

---

1. Class certification discovery here included not only exchange of numerous documents, but also the depositions of 24 representative plaintiffs and 17 Metro–North officers and managers, and the exchange of expert reports and expert depositions.

2. Defendants do not challenge class certification on numerosity grounds. As for adequacy, because defendants challenge the adequacy of the class representatives on the same basis as it challenges their typicality, the adequacy component of Rule 23 will not be separately addressed. See *Amchem Products,* —— U.S. at ——, n. 20, 117 S.Ct. at 2251, n. 20 (noting that the "adequacy of representation requirement 'tends to merge' with the commonality and typicality criteria of Rule 23(a)").

*Krueger v. New York Tel. Co.*, 163 F.R.D. 433, 438 (S.D.N.Y.1995).

The commonality component of Rule 23(a) requires plaintiffs to show that there are questions of law or fact common to the aggrieved class. *Comer*, 37 F.3d at 796; *Krueger*, 163 F.R.D. at 439. Commonality does not require that all class members have identical claims and arguments. *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y.1992). But plaintiffs must make a more than conclusory showing that the defendant discriminated against the class members in some general fashion, even if some of its employees also practiced individual discrimination. See *Falcon*, 457 U.S. at 159 n. 15, 102 S.Ct. at 2371 n. 15; *Open Housing Ctr. Inc. v. Samson Management Corp.*, 152 F.R.D. 472, 476 (S.D.N.Y.1993).

In the instant case, plaintiffs attempt to establish commonality chiefly by reference to statistical data and sociological opinion. As to the first, plaintiffs claim there are meaningful statistical disparities between the frequency with which Metro–North disciplines its African–American employees versus the frequency with which it disciplines other employees, and similarly with respect to frequency of promotions. *See* Report of Dr. Harriet Zellner, dated May 14, 1996, at 3–7. But defendant has satisfied the Court that the plaintiffs' statistics, even taken most favorably to plaintiffs, cannot carry their burden here, because they fail to take account of the fact that different Metro–North positions have materially different individual rates of discipline and of promotion associated with them. *See* Affidavit of David Evans, Ex. 1 at 7–18 (Report of Dr. David Evans, dated April 15, 1996). Unless these differences are taken into account, plaintiffs' global statistics are meaningless. *See Sheehan v. Purolator, Inc.*, 103 F.R.D. 641, 649 (E.D.N.Y.1984), *aff'd*, 839 F.2d 99 (2d Cir.), *cert. denied*, 488 U.S. 891, 109 S.Ct. 226, 102 L.Ed.2d 216 (1988); *see also Woodbury v. New York City Transit Authority*, 832 F.2d 764, 771 (2d Cir.1987); *Stastny v. Southern Bell Tel. &*

*Tel. Co.*, 628 F.2d 267, 278–79 (4th Cir.1980). Conversely, when these differences are taken into account, no statistically significant racial disparities, either for discipline or promotion, can be established with respect to the great majority of the positions at Metro–North. *See* Affidavit of David Evans, Ex. 1 (Report of David Evans, dated April 15, 1996). Thus, plaintiffs' statistics are inadequate to carry their burden of establishing commonality as to the company-wide class here sought to be certified. *See Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 649–57, 109 S.Ct. 2115, 2120–25, 104 L.Ed.2d 733 (1989); *see also Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 994, 108 S.Ct. 2777, 2788–89, 101 L.Ed.2d 827 (1988); *Coser v. Moore*, 739 F.2d 746, 750 (2d Cir.1984).

As for the sociological opinion, even if one puts aside reservations one might have as to its ultimate admissibility under the standards of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), it consists on its face of little more than rank conclusion and gross speculation. For example, the opinion baldly premises that negative stereotypes result in African–American's being considered "inappropriate for higher level jobs" by defendant's managers. Affidavit of William T. Bielby, ¶ 12; Report of William T. Bielby, dated February 26, 1996 at ¶ 12. Similarly, the opinion simply presumes that Metro–North's personnel and disciplinary systems are inherently subjective and allow managers to materially circumvent policies that would reduce subjectivity and bias. Bielby Report ¶ 46. No meaningful weight can reasonably be attributed, even at this state of the proceedings, to a report so facially suspect.

These infirmities in the statistics and the sociological opinion are in no way cured by the other affidavits offered by plaintiffs in support of their motion. These six affidavits (from five plaintiffs and one other putative class member) relate on their face only to individual instances of alleged discrimination.[3] They hardly constitute a statistically significant number of aggrieved persons in a

---

3. Plaintiffs also submitted an unsworn, unsigned summary of the deposition testimony of another putative class member, Sharon Killiebrew. Defendants in turn submitted a statement from Ms.

Killiebrew asserting that plaintiffs' summary was "taken out of context" and "slants, distorts and mischaracterizes my testimony." Rumeld Aff., Ex. 2.

putative class of 1,300 employees. *See Sheehan,* 103 F.R.D. at 649; *Ross v. Nikko Securities Co. Int'l. Inc.,* 133 F.R.D. 96, 97–98 (S.D.N.Y.1990).

Problems of proof aside, there is a more fundamental problem with plaintiffs' approach to commonality, in that, even while seeking certification of a company-wide class, they concede that defendant's standardized, company-wide policies and procedures relating to discipline and promotion are (and were at all relevant times) non-discriminatory. Indeed, plaintiffs state that "If those procedures were followed, it might open the door to equal opportunity." Plaintiffs' Moving Brief, at 15. Their claim is that discrimination enters the picture only because defendant does not strictly adhere to its own policies governing discipline and promotion, but, rather, delegates broad authority for decision-making in promotions and discipline to its management personnel. This alleged policy of overdelegation is of no moment, however, in the absence of any proof that it opens the door to generalized discrimination. Here, as mentioned, neither plaintiffs' statistics nor its sociological opinion meaningfully supports such an inference. Indeed, as mentioned, the statistics, once analyzed in terms of individual positions, suggest only that, if there is any discrimination, it is localized to a few positions and individuals, insufficient to support a company-wide class. *See Stastny,* 628 F.2d at 279; *see also Woodbury,* 832 F.2d at 771; *see also Bradford v. Sears, Roebuck and Co.,* 673 F.2d 792, 795–96 (5th Cir.1982). And the sociological opinion simply assumes its conclusion, rather than meaningfully establishing it.

Accordingly, plaintiffs fail to establish commonality.

**4.** The plaintiffs who contend they have been denied promotions to positions are Veronica Caridad, Donald Hines, James Jackson, Cynthia King and Darryll Simpson. *See* Caridad Tr. 21–22; Hines Tr. 92–110; Jackson Tr. 110; King Tr. 114, 117; and Simpson Tr. 17–18.

**5.** For example, Joan Woodberry admitted to hitting a co-worker and being involved in fights with other employees, Woodberry Tr. 97, 109, 113, 147–51, and Anthony Ellis admits that he slept on the job and was absent from his assigned location. Ellis Tr. 109, 111.

■ Plaintiffs have also failed to satisfy the typicality requirement of Rule 23(a)(3), *i.e.,* the requirement that the claims or defenses of the representative parties be typical of the claims or defenses of the class as a whole. *See Bishop v. New York City Dept. of Housing Preservation and Dev.,* 141 F.R.D. 229, 238 (S.D.N.Y.1992). To the extent that plaintiffs allege that their claims are typical because they arise from alleged company-wide practices and course of conduct, this argument fails for the reasons set forth above. In addition, most of the named plaintiffs appear to center their individual allegations on claims that, on their face, depart markedly from the class allegations. For example, only five of the 25 plaintiffs assert a claim for discriminatory denial of promotion;[4] several plaintiffs admit that they have committed the infractions that gave rise to the challenged disciplinary incidents;[5] still others have been disciplined under plainly unique circumstances.[6] As previously mentioned, one of the plaintiffs is not even an African–American, and therefore, not at all a member of the class proposed by the notice of motion.[7] Moreover, the fact that not all named plaintiffs are union members may further preclude typicality. *See Sheehan,* 103 F.R.D. at 650–51; *Lo Re v. Chase Manhattan Corp.,* 431 F.Supp. 189, 197–98 (S.D.N.Y.1977).

Accordingly, the typicality requirement is likewise not satisfied.

Based on the foregoing, plaintiffs' motion for class certification is denied.

SO ORDERED.

**6.** For example, Charles Robinson contends that he was discriminated against in connection with his suspension for testing positive for drug use, *Robinson* Complaint, ¶¶ 37–72, and James Jackson's discipline arose from his alleged cover-up of safety violations. Jackson Tr. 89–90, 155–56.

**7.** Giesele Miguel is a Pacific Asian Islander. Miguel Tr. 19–20.