Charles ROBINSON, et al., Plaintiffs,

v.

**METRO–NORTH COMMUTER RAILROAD COMPANY, Defendant.**

**Raymond Norris, et al., Plaintiffs,**

v.

**Metro–North Commuter Railroad Company, Defendant.**

Nos. 94 CIV. 7374(JSR), 95 CIV. 8594(JSR).

United States District Court, S.D. New York.

Sept. 27, 2000.

---

57. Order, May 17, 2000 (DI 59).

58. Order, Jun. 20, 2000 (DI 87); Order, Jul. 19, 2000 (DI 94).

Alan L. Fuchsberg, Jacob Fuchsberg Law Firm, New York City, for plaintiff.

Myron D. Rumeld, Proskauer Rose, LLP, New York City, for defendant.

## MEMORANDUM ORDER

RAKOFF, District Judge.

These consolidated cases, in which plaintiffs allege that defendant Metro–North Commuter Railroad Company ("Metro–North") has since its formation in 1983 systematically discriminated against its African–American employees in respect to promotion and discipline, are before the Court on remand from the Court of Appeals, *see Cari-*

*dad v. Metro–North Commuter Railroad*, 191 F.3d 283 (2d Cir.1999), and familiarity with the underlying allegations is presumed, *see id.; see also Robinson v. Metro–North Commuter Railroad Co.*, 175 F.R.D. 46 (S.D.N.Y.1997). In essence, plaintiffs allege that Metro–North, by "over-delegating" implementation of its facially nondiscriminatory promotion and discipline policies to the subjective discretion of departmental managers, permitted the managers to discriminate on account of race. Plaintiffs seek not only injunctive and equitable relief for the class as a whole but also compensatory damages for individual members of the class who were allegedly the victims of individual acts of intentional discrimination.[1]

Presently pending before the Court is plaintiffs' renewed motion to certify a class consisting of all past and present African–American employees of Metro–North, as well as plaintiffs' new but related motion to bifurcate the trial into liability and damages phases in order to allegedly obviate certain class-certification problems that might otherwise exist. By virtue of the guidance provided by the Court of Appeals in *Caridad* and the able briefing and arguments made by counsel for the parties on remand, the class action motion has been largely reduced to the question of whether the case is maintainable as a class action under either the second or third subsections of Rule 23(b), Fed.R.Civ.P.

Subsection 2 provides that an action that otherwise meets the requirements for class action status, *see* Rule 23(a), Fed.R.Civ.P., may be maintained as a class action if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). If all that plaintiffs were seeking here were injunctive relief barring Metro–North from delegating decisions affecting the discipline and promotion to department managers unless less subjective criteria were applied, Rule 23(b)(2) might readily be satisfied. But, as noted, plaintiffs also seek to compensate in damages individu-

al members of the class for acts of allegedly intentional discrimination on the part of the department managers that plaintiffs maintain can be vicariously imputed to Metro–North.

■ On its face, the language of Rule 23(b)(2) does not directly address the question of whether, and under what circumstances, an action that seeks not only classwide injunctive relief from a court (on grounds here of disparate impact) but also individualized awards of damages from a jury (on grounds here of intentionally disparate treatment) qualifies for class action status. The Court of Appeals, however, has concluded that "[s]ubsection (b)(2) was never intended to cover cases ... where the primary claim is for damages, but is only applicable where the relief sought is exclusively or predominantly injunctive or declaratory." *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 564 (2d Cir.1968), *vacated on other grounds* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *see* Fed.R.Civ.P. 23(b)(2) Advisory Committee Note (1966). The key question, then, in applying Rule 23(b)(2) to a case like the instant one, is to determine which is "predominant": plaintiffs' request for damages or their request for injunctive relief.

■ The Second Circuit has offered relatively little guidance to making this determination, leaving the matter largely to the discretion of the district courts. In 1998, however, the Fifth Circuit directly addressed the issue in *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 410 (5th Cir. 1998), and concluded that in any such action in which both injunctive and monetary relief were sought, the inherently individualized nature of the determination of damages would render it predominant, and thereby make class action status under Rule 26(b)(2) inappropriate, except in those rare incidences in which the request for monetary relief were wholly "incidental" to the requested injunctive relief. *See id.* at 415.

By incidental, we mean damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief. Ideally, incidental damages should be only those to which class members automatically

---

1. While plaintiffs also originally sought punitive damages, they now concede that they cannot obtain such damages against a public benefit corporation like Metro–North.

would be entitled once liability to the class (or subclass) as a whole is established. . . . Moreover, such damages should at least be capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances. Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individuals's case; it should neither introduce new and substantial legal or factual issues, nor entail complex individualized determinations. Thus, incidental damages will, by definition, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions.

*Id.* The standard enunciated in *Allison* thus neatly balances the efficiencies of a class-wide injunctive action against the due process requirements of individualized claims for damages, for "as claims for individually based money damages begin to predominate, the presumption of cohesiveness decreases while the need for enhanced procedural safeguards to protect the individual rights of class members increases." *Id.* at 413.

The Fifth Circuit standard has been endorsed by the Seventh Circuit, *see Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 898 (7th Cir.1999), and arguably by the Sixth Circuit, *see Butler v. Sterling, Inc.*, No. 98–3223, 2000 WL 353502 (6th Cir.2000) (unpublished opinion), and appears not to have been disapproved by any circuit court. If applied to this case, such a standard would clearly require denial of class action status under Rule 23(b)(2), since determination of the damages suffered by individual members of the class would require individualized proof and pro-

ceedings to determine whether each such member suffered intentional discrimination on the part of his or her department manager, what injuries each such member thereby suffered, what individualized damages were appropriate to redress such injuries, etc. Even, however, if some less rigorous standard than that formulated by the Fifth Circuit were applied, by any reasonable standard, and on any reasonable view of this case, these multiple individual determinations of damages for the numerous members of the class here proposed would overwhelm class-wide injunctive issues, from both the standpoint of the individual plaintiffs and the standpoint of the Court.

■ Tacitly conceding the force of these objections, plaintiffs, following remand of this case form the Second Circuit, moved to bifurcate the trial of liability from the trial of damages, arguing that at least the issue of Metro–North's liability could be determined on a class-wide basis. But "liability" here means not only liability for unintentional disparate impact but also liability for intentional disparate treatment; and since Metro–North's liability for intentional discrimination, if any, is a function of its vicarious liability for the allegedly discriminatory acts of particular department managers in particular individual situations,[2] these individual determinations will overwhelm the liability phase of any trial nearly as much as they would overwhelm any damages phase, once again rendering class action treatment inappropriate under Rule 23(b)(2).[3]

■ Turning to plaintiffs' alternative request for class certification under subsection 3 of Rule 23(b), that subsection allows courts to certify a class where "a court finds that

---

**2.** "Plaintiffs have never argued that Metro–North, at the highest levels, has a hidden policy of discrimination that could be smoked out by showing disparate impact throughout the company, Plaintiffs have conceded that Metro–North does not have a policy of discrimination. Indeed, it is undisputed that the company has written anti-discrimination policies applicable to all departments. Plaintiffs contend instead that certain department managers violate these policies by discrimination, and that it is Metro–North's policy of delegating to these managers the authority to promote and discipline that renders Metro–North liable for discrimination." *Caridad* at 297 (Walker, J., dissenting).

**3.** At times, plaintiffs appear to suggest an even further bifurcation, in which the Court would first determine, as a class action, whether Metro–North's policy of "over-delegation" had led to a disparate impact on the promotion and discipline of African–American employees. This, of course, would be a very different case from the one alleged in the instant complaints, which are replete with allegations of intentional discrimination and demands for compensatory damages (claims which plaintiffs in no way propose to abandon). As to these latter claims, the effect of such ultra-bifurcation would be, not to save judicial resources, but to waste them, for the result of this first phase, whichever way it went, would not resolve any element of the remaining phases.

questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). But it is obvious from what has already been discussed with respect to subsection 2 that in this case questions of fact affecting individual members of the class—such as whether a given individual member of the class was individually discriminated against by an individual department manager and thereby suffered individualizes injuries compensable by individual monetary damages—vastly predominate over any common questions of law or fact, at least so far as plaintiffs' claims of disparate treatment are concerned. For the same reason, the class action approach, far from being more efficient than individual actions, would be hopelessly complicated and prolonged (and made even more so if plaintiffs suggestions for bifurcation were adopted).

Moreover, these general objections to the applicability of Rule 23(b)(3) to this case are further buttressed by consideration of the particular factors specified in the second sentence of Rule 23(b)(3), *viz.,* "(A) the interest of members in the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of the class action." As to the first factor, the highly individualized nature of the determination of disparate treatment and damages in this case makes the interest of individual class members in individually controlling the prosecution of their individual claim, rather than having it controlled by class representatives, a very strong one. Indeed, as discussed below, the presently-named plaintiffs have already settled their individual claims for damages, and therefore have little, if any, interest in zealously pursuing damages awards for other class members.

Second, and closely related, while most of the litigation in this case has thus far concerned the proposed certification itself, the fact that the named class representatives whose claims were not immediately dismissed on the merits went on to individually settle their claims for damages bears further implicit testament to the individualized nature of the overall litigation even as it has progressed to date.

Third, because plaintiffs and defendants are all likely to be located in the greater New York area, this is not a case where creating a class action will prevent multiple suits across the country. Consequently the fact that creating a class would lead to the claims here being litigated in the same forum is not a compelling reason to certify the class.

Finally, as already discussed, the "difficulties likely to be encountered in the management of a class action" in this case are very considerable and fraught with peril to the individual rights of plaintiffs and defendant alike.

Accordingly, the Court concludes that this case does not qualify for class certification, either in its entirety or as bifurcated, under either Rule 23(b)(2) or Rule 23(b)(3).

■ There is, moreover, an independent objection to class certification that has arisen as a result of events that followed this Court's original denial of class certification on other grounds and that was therefore neither considered by this Court nor reviewed by the Court of Appeals. Specifically, after this Court rendered its prior decision denying class certification, defendant entered into settlements with all the named plaintiffs who now remain in this case (certain other plaintiffs having been dismissed on the merits). Pursuant to those settlements, these remaining plaintiffs entered into a Stipulation, dated January 13, 1998, and so ordered by the Court, that dismissed their claims with prejudice:

> except that the dismissal shall be without prejudice to the rights these plaintiffs otherwise would have: (i) to participate in the appeal of the Court's decision denying plaintiff's motion for class certification; (ii) to seek to participate as named plaintiffs and/or class representatives, offer evidence about their personal circumstances in support of the class claims and/or receive any

class-wide injunctive relief (but not individual relief of any kind ... in the event that ... a class is certified in these actions); and (iii) to apply for reasonable attorneys' fees and costs.

Supp. Notice of Motion for Class Cert., Ex. A. The net effect is that the only remaining plaintiffs named in this case as class representatives have little or no continued interest in pursuing damages on behalf of their fellow class members. Accordingly, as a result of these new developments, class action status must independently be denied because the stated class representatives no longer "fairly and adequately protect the interests of the class." *See* Rule 23(a)(4).[4]

For each and all of the foregoing reasons, plaintiffs' motions for class certification and bifurcation are hereby denied. In light of the above-quoted settlement stipulation, the effect is also to dismiss the case with prejudice. Clerk to enter judgment.

SO ORDERED.

4. Apprised of this problem at oral argument of these motions, plaintiff's counsel suggested he might be able to find class representatives of continuing adequacy, *see* transcript of 1/19/00 at 9–12, but he thereafter failed to offer any.