James C. MILLER, Ralph Brown, Vincent Gray, Charles Knight, Michael Jones, Harold G. Williams, Jerry Hemingway, Barry C. James and Dwayne Jackson, Plaintiffs,

v.

HYGRADE FOOD PRODUCTS CORPORATION and Sara Lee Corporation, Defendants.

CIV. A. No. 99–1087.

United States District Court, E.D. Pennsylvania.

Jan. 29, 2001.

Stephen A. Whinston, Berger & Montague, P.C., Philadelphia, PA, Cynthia L. Butler, Butler and Spears, Washington, DC, Robert T. Vance, Jr., Philadelphia, PA, for James C. Miller, Ralph Brown, Vincent Gray, Charles Knight, Michael Jones, Harold G. Williams, Jerry Hemingway, Barry C. James and Dewayne Jackson.

Howard A. Rosenthal, P.C., Patrick J. Doran, Pelino & Lentz, Philadlephia, PA, S. Craig Moore, Constangy, Brooks and Smith, Nashville, TN, William A. Blue, Jr., Philadelphia, PA, for Hygrade Food Products Corporation.

Howard A. Rosenthal, P.C., Patrick J. Doran, Pelino & Lentz, Philadlephia, PA, S. Craig Moore, Angela Marie Hubbell, Constangy, Brooks and Smith, Nashville, TN, for Sara Lee Corporation

## MEMORANDUM

REED, Senior District Judge.

Currently before the Court is the renewed motion of plaintiffs James C. Miller, Ralph Brown, Vincent Gray, Charles Knight, Michael Jones, Harold G. Williams, Jerry Hemingway, Barry C. James and Dwayne Jackson for class certification pursuant to Federal Rule of Civil Procedure 23, (Document No. 53), the response by Hygrade Food Products Corporation ("Hygrade"), the reply, and the supplemental briefs thereto. This law suit arises out of claims brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981(a), and the Civil Rights Act of 1866, 42 U.S.C. § 1981, alleging race discrimination. Pursuant to Local Rule 7.1(f), this Court held oral argument on December 11, 2000. For the reasons set forth below, the motion will be denied.[1]

### I. Background

Sara Lee Corporation is the parent corporation of Hygrade which employs approximately 300 employees at its Philadelphia facility, approximately 58% of whom are minorities. Hygrade produces and packages hot dogs, bacon and ham at its Philadelphia facility. Nine current employees at Hygrade's Philadelphia facility initiated this lawsuit alleging that Hygrade has engaged in a continuous pattern and practice of race discrimination and racial harassment. Specifically, plaintiffs allege that Hygrade's employment decisions regarding discipline, termination, compensation, training, work assignment, hiring of temporary employees, and promotions are determined in a "highly subjective" manner at the hands of a "small, virtually entirely non-Black, central group of people." (Pls.' Mem. of Law in Support of Pls.' Renewed Mot. for Class Certification at 2.) Plaintiffs further allege that Hygrade "condon[es] and perpetuat[es]" a racially hostile work environment. (*Id.*) Plaintiffs describe discrimination against African–Americans in different job categories and in different forms. Many of the factual allegations describe situations in which African–American employees were treated differently than similarly situated white employees. Plaintiffs seek to represent a broad-based class of all African–Americans employed at or who were not hired for permanent employment from a temporary position at the Philadelphia facility from May 1, 1993 to June 1, 2000.

### II. Standard for Class Certification

To be certified, a class must fulfill the prerequisites of Federal Rule of Civil Procedure 23(a) and 23(b). District Courts have

---

1. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal law.

broad discretion in determining whether to certify a class. *See Reiter v. Sonotone Corp.,* 442 U.S. 330, 345, 99 S.Ct. 2326, 2334, 60 L.Ed.2d 931 (1979); *Stewart v. Associates Consumer Disc. Co.,* 183 F.R.D. 189, 193 (E.D.Pa.1998). The burden of establishing that these requisites have been met lies with the plaintiffs. *See Nelson v. Astra Merck, Inc.,* No. Civ.A. 98–1283, 1998 WL 737982, at *1 (E.D.Pa. Oct.22, 1998). The Court must refrain from inquiring into the merits of the claims. *See Barnes v. American Tobacco Co.,* 161 F.3d 127, 140 (3d Cir.1998), *cert. denied,* 526 U.S. 1114, 119 S.Ct. 1760, 143 L.Ed.2d 791 (1999). Because Rule 23(b) serves as the basis for today's ruling, I will not address the issue of whether the proposed class meets the requirements of Rule 23(a).

■ Rule 23(b) allows classes to be maintained in one of three ways. Two sub parts are of relevance here. Rule 23(b)(2) allows certification where, "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Class actions certified under (b)(2) are restricted to those cases where the *primary* relief sought is injunctive or declaratory relief. *See Barnes,* 161 F.3d at 142–43.

Rule 23(b)(3) provides for certification where, "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."[2] This provision was designed for situations in which "class-action treatment is not as clearly called for" as it is in Rule 23(b)(1) and (b)(2) situations, but where class suit "may nevertheless be convenient and desirable." Fed.R.Civ.P. 23(b)(3) Advisory Notes to 1966 Amendment. While the actual language of Rule 23(b)(3) does not preclude certification where individual damages "run high," the Advisory Committee notes suggest that the drafters of (b)(3) primarily had in mind "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem Prod. Inc. v. Windsor,* 521 U.S. 591, 617, 117 S.Ct. 2231, 2246, 138 L.Ed.2d 689 (1997).

Before the passage of the 1991 Civil Rights Act ("1991 Act"), most Title VII pattern and practice class actions which alleged intentional discrimination, such as the one presented here, were certified under Rule 23(b)(2) because the Civil Rights Act of 1964 allowed for very little relief beyond injunctive and declaratory relief. *See e.g., Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 243 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).[3] Thus, proposed classes could easily meet the 23(b)(2) standard. Now that the 1991 Act has been enacted, Title VII class certification is much more debatable. *See generally, Allison v. Citgo Petroleum Corp.,* 151 F.3d 402 (5th Cir.1998) (calling into question general propriety of Title VII classes because of dramatic effects that 1991 Act has on Rule 23).[4]

---

2. This provision includes four factors for consideration:

   (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

3. In *International Broth. of Teamsters v. United States,* 431 U.S. 324, 360–61, 97 S.Ct. 1843, 1867–68, 52 L.Ed.2d 396 (1977), the United States Supreme Court created a two-stage method for litigating these cases. Essentially, suits were separated into a liability phase and a remedy phase. *See id.*

4. I also note that this Court has found no reported decision where a court within this Circuit has addressed the effects that the 1991 Act has on class certification and still certified a Title VII *litigation* class seeking compensatory and monetary damages. I am aware of at least one decision, issued by this Court, where a Title VII *settlement* class has been certified. *See Royal v. Aramark Corp.,* No. 97–6226, slip op. at 1–2 (E.D.Pa. July 27, 1999) (certifying settlement class of 267 members where parties agree that class meets requirements of Rule 23(a) and (b) and where damages, including both monetary and equitable relief, are fairly calculated and agreed to without necessitating individual hearings and thereby without creating disparate factual issues barring certification). When settlement only classes are presented to the court, individual issues usually present in personal injury or Title VII litigation would become irrele-

## A. The 1991 Act

Congress amended the Civil Rights Act of 1964 in two critical ways. First, the 1991 Act added the remedies of compensatory and punitive damages for suits alleging intentional discrimination. *See id.;* 42 U.S.C. § 1981a(a)(1). Compensatory damages include relief for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3). Punitive damages are allowed where the employer discriminates "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1)(2). The 1991 Act caps damages at a maximum of $300,000 per plaintiff. *See* 42 U.S.C. § 1981a(c). Prior to these amendments, Title VII cases only allowed for back pay and other equitable remedies. These new remedies translate into a greater diversity and complexity of the issues to be adjudicated.

Second, under the 1991 Act, where compensatory or punitive damages are sought in an intentional discrimination suit, either party may demand a trial by jury. *See* 42 U.S.C. § 1981a(c)(1). Before the 1991 Act was passed, both the liability and the remedy phases were determined in bench trials. This amendment creates potential management concerns as well as Seventh Amendment problems.

## B. Rule 23(b)(2) Certification

■ As stated, in determining whether class certification is proper under Rule 23(b)(2), this Court must ask if the *primary* relief sought is injunctive or declaratory in nature. *See Barnes,* 161 F.3d at 142. Rule 23(b)(2) classes must be cohesive, particularly because unnamed members are bound by the decision with no opportunity to opt-out. *See id.* at 142–43. In other words, "disparate factual differences" can bar class certification. *Id.* at 142. Where a class suffers from a common injury and seeks class-wide relief, there is a presumption of cohesion, i.e., the sameness in the relief sought binds the class. *See Allison,* 151 F.3d at 413. In fact, this provision of the rule was specifically designed for civil rights actions seeking such broad relief for an "often unascertainable or amorphous class of persons." *Barnes,* 161 F.3d at 142. In contrast, where a class seeks monetary relief, the class becomes less cohesive because assessing these damages often necessitates an examination into individual claims. *See Allison,* 151 F.3d at 413 (citing *Eubanks v. Billington,* 110 F.3d 87, 95 (D.C.Cir.1997)).

■ The Court of Appeals for the Third Circuit has not established a test for determining when, if both injunctive and declaratory relief as well as monetary relief are sought, the former would be deemed the primary relief sought. Nor do the Rules of Civil Procedure offer any guidance. The Court in *Allison,* however, has created such a test, holding that "monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief." *Allison,* 151 F.3d at 415 (citing *Williams v. Owens–Illinois, Inc.,* 665 F.2d 918, 928–29 (9th Cir.), *cert. denied,* 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982)). Incidental damages are those "that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." *Id.* Three factors further define "incidental" damages. First, such damages should be of the kind to which class members would be automatically entitled. *See id.* Second, such damages should be computable by "objective standards," and not standards significantly reliant upon "the intangible, subjective differences of each class member's circumstances." *Id.* Third, such damages should not necessitate additional hearings. *See id.*

Persuaded by the soundness of the analysis, and the holdings of other courts which agree, I adopt that test here.[5] *See, Lemon v.*

---

vant. *See Amchem Prod. Inc. v. Windsor,* 521 U.S. 591, 619–20, 117 S.Ct. 2231, 2248, 138 L.Ed.2d 689 (1997); *In re Diet Drugs,* Nos. 1203, 99–20593, 2000 WL 1222042, at *43 (E.D.Pa. Aug.28, 2000).

**5.** Adding support to this position, I note that the United States Supreme Court has voiced serious concern about the propriety of (b)(2) classes seeking compensatory and punitive damages because members lack the opportunity to opt-out of these cases. *See Ticor Title Ins. Co. v. Brown,* 511 U.S. 117, 120–21, 114 S.Ct. 1359, 1361, 128 L.Ed.2d 33 (1994); *cf. Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 845–47, 119 S.Ct. 2295, 2314–15, 144 L.Ed.2d 715 (1999) (observing in (b)(1) class action that members are entitled to personal

*International Union of Operating Eng'rs.*, 216 F.3d 577, 580–81 (7th Cir.2000) (applying *Allison* test to proposed Title VII class); *Adams v. Henderson*, 197 F.R.D. 162, 171 (D.Md.2000) (same); *Robinson v. Metro–North Commuter R.R. Co.*, 197 F.R.D. 85 (S.D.N.Y.2000) (same); *Robinson v. Sears, Roebuck and Co.*, 111 F.Supp.2d 1101, 1126–27 (E.D.Ark.2000) (same); *Ramirez v. De-Coster*, 194 F.R.D. 348, 352 (D.Me.2000) (same); *Faulk v. Home Oil Co. Inc.*, 184 F.R.D. 645, 661, 663 (M.D.Ala.1999) (same); *cf. Smith v. University of Washington Law School*, 233 F.3d 1188, 1196 (9th Cir.2000) (adopting test for non-Title VII class); *Butler v. Sterling, Inc.*, No. 98–3223, 2000 WL 353502, at *6 (6th Cir. Mar.31, 2000) (unpublished opinion) (same).[6]

■ The prayer for relief sought here cannot be assessed by objective standards and would require individual hearings. *See Allison*, 151 F.3d at 417 (determining that individual testimony from each class member, medical experts, and other third parties would likely be necessary and that punitive damages would be, at least in part, reliant on

notice and opportunity to opt-out in suits for money damages).

**6.** A few courts have rejected or attempted to distinguish *Allison* in terms of its holding with respect to (b)(2) certification. *See e.g., Smith v. Texaco, Inc.*, 88 F.Supp.2d 663, 679–80 (E.D.Tex. 2000); *Hoffman v. Honda of Am. Mfg., Inc.*, 191 F.R.D. 530, 534–35 (S.D.Ohio 1999); *Warnell v. Ford Motor Co.*, 189 F.R.D. 383, 389 (N.D.Ill. 1999); *McClain v. Lufkin Indus., Inc.*, 187 F.R.D. 267, 282 (E.D.Tex.1999). This Court, however, has found no Court in this land which has created a superior test. In addition, I note that no Court of Appeals has disapproved of the *Allison* Court's (b)(2) definition.

At oral argument, plaintiffs essentially took the position that because only injunctive relief would cure the alleged discrimination, injunctive relief was the primary relief sought. The problem with this argument is that it fails to create a test which takes the need for cohesion into consideration. Put another way, even if this Court were to adopt the plaintiffs' test, Rule 23(b)(2) certification would still be barred because the individualized damage inquiry creates a non-cohesive class.

**7.** I understand that the potential 200 member class presented here is considerably smaller than the potential 1,000 member class presented in *Allison*. I do not, however, find that difference to mean that the two classes are incomparable. First, many of the courts swayed by the reasoning in *Allison* were faced with classes of approxi-

compensatory damages). Plaintiffs bring claims alleging across the board discrimination in the areas of discipline, termination, compensation, training, work assignment, hiring of temporary employees, and promotions. Plaintiffs also allege a hostile work environment. The plaintiffs are not claiming that each worker was affected by the alleged discriminatory practices in the same manner. Rather, subjective standards will apply as the putative class includes individuals employed in different divisions, under different supervisors, for varying durations of time over a seven year period. Assuming arguendo that Hygrade operated in a discriminating manner, calculating compensatory and punitive damages, as opposed to simply back pay, of 200 persons would prove to be quite an individualized task. Presumably, some members will have needed medical care, while others will not. In some cases, the family of the members will have been affected, while in other cases, such a probe will be unnecessary. These concerns represent only a sampling of the individualized nature of appraising damages.[7] Thus, I conclude that in the present action, monetary relief predominates and precludes (b)(2) certification.[8]

mately 200 or even fewer members. *See e.g., Adams*, 197 F.R.D. at 169–70; *Faulk v. Home Oil Co.*, 184 F.R.D. at 654. Second, just because the class presented here is smaller, does not mean it requires a less individualized approach. Each putative member, while there may exist fewer of them, was still affected by the alleged discrimination in contrasting ways.

**8.** Plaintiffs rely on *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239 (3d Cir.1975), for the proposition that (b)(2) certification is proper. In *Wetzel*, the Court of Appeals held, *inter alia*, that the district court, *after properly certifying a class under Rule 23(b)(2)*, was not required to redetermine that the suit be maintained under Rule 23(b)(3) once the court concludes on a motion for summary judgment that the injunctive remedies fail. *See id.* at 250. Plaintiffs argue that if a class can be maintained after all injunctive relief drops out, then this class should meet the rigors of Rule 23(b)(2). I find *Wetzel* quite distinguishable. I am faced with a class that can *never* meet the requirements of Rule 23(b)(2). The district court in *Wetzel*, on the other hand, *originally* was presented with a class that met the requirements for Rule 23(b)(2). *See id.* In other words, the issue there dealt with the later question of how to handle class maintenance once equitable claims fail.

Plaintiffs also contend that in *Wetzel* the Court of Appeals noted that Title VII cases were "par-

## C. Rule 23(b)(3)

■ I now turn to whether the putative class can meet the 23(b)(3) requirements. As stated, the two hurdles in this provision include predominance and superiority. *See* Fed.R.Civ.P. 23(b)(3). Predominance is defined by cohesion, a requirement also found in (b)(2) and explained above. *See Amchem Prod. Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 2249, 138 L.Ed.2d 689 (1997) (predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation"). In other words, like (b)(2) certification, (b)(3) certification is precluded where individual issues predominate. *See Barnes*, 161 F.3d at 143 (denying certification of tobacco class for lack of cohesion because "addiction, causation, the defenses of comparative and contributory negligence, the need for medical monitoring and the statute of limitations present too many individual issues to permit certification."); *Georgine v. Amchem Prod., Inc.*, 83 F.3d 610, 626 (3rd Cir.1996), *aff'd by*, 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (finding that (b)(3) asbestos class lacked cohesion in part because "members were exposed to different asbestos-containing products, for different amounts of time, in different ways, and over different periods. Some class members suffer no physical injury or have only asymptomatic pleural changes, while others suffer from lung cancer, disabling asbestosis, or from mesothelioma"). Put another way, 23(b)(3) treatment is inappropriate where litigation would ultimately "degenerate in practice into multiple lawsuits separately tried." Fed.R.Civ.P. 23(b)(3) Advisory Notes to 1966 Amendments.

The predominance requirement overlaps greatly with the superiority requirement in that as the number of individual issues rises, the class action devise becomes a less superior or method for adjudication. *See Allison*, 151 F.3d at 419. In assessing the superiority of the method, the Court is asked to balance the merits of certifying a class in terms of fairness and efficiency. *See Georgine*, 83 F.3d at 632. Factors in this analysis include whether managing the litigation of cases involving, e.g., multiple uncommon issues, is feasible and whether the individual interests would seek to control the litigation or whether the interest of all those bound to the judgment are protected. *See id.* The class action tool is also less superior in Title VII suits because individuals bringing these actions can receive up to $300,000, which is a rather substantial sum. *See Allison,* 151 F.3d at 420; *see also, Amchem,* 521 U.S. at 615, 117 S.Ct. 2231 (class actions are superior method where "the amounts at stake for individuals may be so small that separate suits would be impracticable"). In fact, one of the clear purposes of the 1991 Act was *"to provide appropriate remedies* for intentional discrimination and unlawful harassment in the workplace." 42 U.S.C. § 1981 Historical and Statutory Notes section entitled Purposes of 1991 Amendments (emphasis added); *see also, Duffield v. Robertson Stephens & Co.,* 144 F.3d 1182, 1193 (9th Cir.), *cert. denied,* 525 U.S. 982, 119 S.Ct. 445, 142 L.Ed.2d 399 (1998) (characterizing this purpose as the "primary purpose").[9] This point deserves attention because denying class certification does not mean that plaintiffs will ultimately be denied relief if they can prove their claims. In other words, today's ruling only affects the appropriate model for adjudication.

■ As previously explained, (b)(2) certification is precluded because calculating compensatory and punitive damages cannot be completed by applying objective standards

---

ticularly fit" for (b)(2) certification. *See id.* The problem with that argument is that *Wetzel* was decided before the 1991 Act became the law. The class presented there was not seeking compensatory and punitive damages. Thus, plaintiffs reliance on *Wetzel* is outdated.

Plaintiffs also take the position that if equitable relief includes back and front pay, then it can also include compensatory and punitive damages, especially in light of the statutory cap on damages. Plaintiffs seem to be arguing that if pre- 1991 Act Title VII classes could be certified

under (b)(2) despite the fact that the class was seeking back and front pay, then the added remedies should not bar certification. For the reasons explained above, I disagree.

9. Plaintiffs argue that it is impossible that Congress intended that in providing additional remedies for intentional discrimination cases, class action treatment in such cases would prove so challenging. Plaintiffs, however, fail to find any reported support for this proposition. Nor did this Court.

and would require individual examinations. I find that for those same reasons, (b)(3) certification is barred because individual factual issues predominate over class issues. As stated, the putative class members were exposed to the alleged discrimination in varying ways, by different people, for different amounts of time and experienced different injuries. *See Allison*, 151 F.3d at 419 (observing that claims for compensatory and punitive damages necessitate the following individualized questions: "what kind of discrimination was each plaintiff subjected to; how did it affect each plaintiff emotionally and physically, at work and at home; what medical treatment did each plaintiff receive and at what expense; and so on and so on."); *see also, Adams*, 197 F.R.D. at 171–72 (relying on *Allison* to deny 23(b)(3) certification of Title VII class); *Robinson*, 197 F.R.D. 85 (same); *Ramirez*, 194 F.R.D. at 353–54 (same); *Faulk*, 184 F.R.D. at 661–63 (same); *cf. Rutstein v. Avis Rent–A–Car Sys., Inc.*, 211 F.3d 1228 (11th Cir.2000) (non-Title VII civil rights case relying on *Allison* decision to reverse district court's grant of class certification).[10] I also find that the class action device is not a superior method for adjudication on this record, particularly where plaintiffs have failed to offer to this Court a practical plan for adjudicating this action, including, e.g., a creative description of proposed subclasses to alleviate some of the inherent problems with meeting the demands of Rule 23(b). *See Allison*, 151 F.3d at 420 n. 15 (observing that "district court certainly did not abuse its discretion in not attempting to devise a workable subclassing plan of its own" where plaintiffs failed to present one).

Strengthening my conclusions is the effect of the inclusion of the right to demand a jury trial in intentional discrimination cases under the 1991 Act. This amendment raises major manageability concerns that not only make class action a less superior method, but also implicate the Seventh Amendment. I find that it would be highly impractical to have one jury weigh all the evidence within the liability phase and then apply that presumption, if so found, to each of the potential 200 class members. *See Ramirez*, 194 F.R.D. at 354 (determining the same for a potential class of 1,000). On the other hand, this Court would run afoul of the single jury requirement of the Seventh Amendment if it were to bifurcate issues to separate juries. *See In re Paoli R.R. Yard PCB Litigation*, 113 F.3d 444, 452 (3d Cir.1997) (finding that upon bifurcation a court must "divide issues between separate trials in such a way that the same issue is not reexamined by different juries."); *see also, Ramirez*, 194 F.R.D. at 354 (confronting same Seventh Amendment dilemma as faced here by this Court); *cf. Allison*, 151 F.3d at 425 (determining that Seventh Amendment would be offended if disparate impact and disparate treatment claims were bifurcated).

### D. Alternative Rule 23(b) Certifications

Plaintiffs request that if the traditional Rule 23(b) means of certification are unavailable, this Court should certify the class under one of the two alternative methods which the Court of Appeals for the Seventh Circuit has instructed district courts to consider. *See Lemon v. Int'l Union of Operating Eng'rs*, 216 F.3d 577, 581–82 (7th Cir.2000); *Jefferson v. Ingersoll Int'l. Inc.*, 195 F.3d

---

**10.** I recognize that some district courts have disagreed with the reasoning in the *Allison* decision regarding (b)(3) certification or have gone to great lengths to distinguish that case. *See e.g., Smith v. Texaco, Inc.*, 88 F.Supp.2d 663, 680–83 (E.D.Tex.2000); *Carter v. West Publ'g Co.*, No. 97±2537–CIV–T–26A, 1999 WL 376502, at *8 (M.D.Fla.1999), *rev'd on other grounds*, 225 F.3d 1258 (11th Cir.2000). These courts, however, fail to address many of the concerns raised by the Court in *Allison*. For example, both courts seemed persuaded by the fact that unlike the *Allison* class which reached over 1,000 members, the classes presented there were each less than 200. *Texaco*, 88 F.Supp.2d at 682; *Carter*, 1999 WL 376502, at *8. The Court in *Texaco* determined that if certification were denied, the Court

would likely be faced with 200 separate law suits. *Texaco*, 88 F.Supp.2d at 682. I point out, however, that even if the class were certified, the damages phase of the litigation would result in that same number of individual suits because of the need for an individualized inquiry. In addition, both Courts noted that the *Allison* decision was based in part on the plaintiffs' unwillingness to provide subclasses to ease the manageability problems. *Texaco*, 88 F.Supp.2d at 681; *Carter*, 1999 WL 376502, at *8. This Court has repeatedly asked plaintiffs if they would like to establish sub-classes, and plaintiffs have consistently stated they do not wish to proceed with sub-classes. I harbor great doubt, however, that even the most creative sub-classes would eliminate *all* the problems presented on the record before me.

894, 898 (7th Cir.1999). I observe at the outset, however, that the Court of Appeals in those cases did not *order* the respective district courts to certify the proposed classes before them. Rather, the Court of Appeals remanded with instructions to *consider* these alternatives.

The first method is a divided or hybrid certification whereby the court would certify the injunctive aspects of the case under Rule 23(b)(2) and the damages aspects under Rule 23(b)(3). *See Lemon,* 216 F.3d at 581–82; *Jefferson,* 195 F.3d at 898. The second approach would involve certifying the class under Rule 23(b)(2) for all remedies, but exercising plenary authority to provide notice and opt-out opportunities under Rules 23(d)(2) and 23(d)(5). *See Lemon,* 216 F.3d at 582; *Jefferson,* 195 F.3d at 898. While these approaches seem to solve the problem of binding individuals to money damage awards, they fail to make the class cohesive. As stated, in order for a class to be maintained under Rule 23(b)(2), the issues cannot be so disparate that the class loses its cohesion. Likewise, in order for a class to be maintained under Rule 23(b)(3), individual issues may not predominate. Thus, I conclude that certification is not possible under either alternative method.

### III. Conclusion

I conclude that the class presented here cannot meet the requirements of Rule 23(b) and therefore class certification is precluded.